U.S. DISTRICT COURT
DISTRICT OF VERMONT
FILED

2026 FEB -6 PM 4:50

CLERK

BY _____ KP
          DEPUTY CLERK

UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

| | |
|---|---|
| DILSON JOEL GRATEROL RUIZ,<br>Petitioner,<br><br>v.<br><br>DONALD J. TRUMP, President of the United States;<br>DAVID WESLING, Acting Boston Field Office<br>Director of Immigration and Customs Enforcement[1];<br>DAVID W. JOHNSTON, Director Immigration and<br>Customs Enforcement Vermont; TODD M. LYONS,<br>Acting Director U.S. Immigration and<br>Customs Enforcement; PETER R. FLORES, Acting<br>Commissioner U.S. Customs and Border Protections;<br>KRISTI NOEM, U.S. Secretary of Homeland Security;<br>MARCO RUBIO, Secretary of State; PAMELA J.<br>BONDI, U.S. Attorney General; GREG HALE,<br>Superintendent Northwest State Correctional Facility<br>Respondents. | Case No. 2:26-cv-00012 |

**OPINION AND ORDER**
(Doc. 1)

Petitioner Dilson Joel Graterol Ruiz filed a petition for writ of habeas corpus ("the Petition") pursuant to 28 U.S.C. § 2241 challenging his continued detention by Immigration and Customs Enforcement ("ICE") under the Fifth Amendment to the United States Constitution and as violative of 8 U.S.C. § 1226(a). Respondents include several federal officials in their official capacities and Greg Hale, Superintendent of the Northwest State Correctional Facility ("Northwest") in St. Albans, Vermont, where Petitioner is currently detained.

On January 25, 2026, the same day the Petition was filed, Mr. Graterol Ruiz filed an emergency motion for a temporary restraining order. In the emergency motion, Mr. Graterol

---

[1] The court has been notified that David Wesling now serves as the Acting Field Office Director of the Boston Field Office of ICE. He shall be substituted for Patricia Hyde as a party. Fed. R. Civ. P. 25(d). The Clerk's Office is respectfully requested to make this change.

sought an order preventing his removal from the District of Vermont. The court granted the temporary restraining order, directing Respondents to respond to the petition no later than January 30, 2026, and scheduling a hearing on the petition on February 2, 2026. Following the issuance of this Order, the Clerk's Office received communication from ICE indicating that Northwest may not be able to address Mr. Graterol Ruiz's medical needs and wished to transport him to a facility in Miami, Florida. The court scheduled a status conference on January 28, 2026 to discuss this issue.

At the hearing, counsel for Superintendent Hale indicated that staff at Northwest were unsure they could provide the necessary medical care to Petitioner given his needs, which are discussed in more detail below. Petitioner's attorney represented that although Petitioner had, at times, gone without necessary medication at Northwest, he was now receiving the medicine, and he was not in immediate danger pending the hearing on February 2, 2026.

Federal Respondents filed a response to the petition on January 30, 2026. Petitioner filed a reply on February 1, 2026. The hearing was held on February 2, 2026. At that hearing, the court directed counsel representing Superintendent Hale to provide copies of Mr. Graterol Ruiz's medical records. These records were provided to the court and the parties on February 3, 2026 and February 4, 2026.

## Background[2]

Dilson Joel Graterol Ruiz is a citizen of Venezuela. He came to the United States to join family members living in Massachusetts. While traveling to the United States from Venezuela, Mr. Graterol Ruiz was injured in Mexico when he fell from a fourth-floor window. The cause of the fall and the specifics of the resulting injuries are unclear from the limited record before the

---

[2] The factual record has been compiled from the parties' filings, records provided to the court, and representations made at the hearings.

court, but it is clear Mr. Graterol Ruiz suffered a significant injury to his lower right leg. According to medical records, Mr. Graterol Ruiz had several surgeries in Mexico to treat fractures to his lower leg.

After receiving this medical treatment in Mexico, Mr. Graterol Ruiz entered the United States at the Brownsville-Gateway land port of entry, on May 2, 2024, seeking admission to the country. Customs and Border Patrol agents determined he did not have valid entry documents, so he was taken into the Department of Homeland Security's ("DHS") custody and charged as inadmissible under 8 U.S.C. § 1182(a)(7)(A)(i)(I). Mr. Graterol Ruiz was not subject to expedited removal, however, as he was granted humanitarian parole pursuant to 8 U.S.C. § 1182(d)(5)(A). On the same day he arrived in the country, Mr. Graterol was given a Notice to Appear before an Immigration Judge on July 31, 2024 in Massachusetts, where he intended to reside with his family. At the hearing on the present motion, Respondents, through counsel, indicated that the July 31, 2024 hearing was cancelled.

Once granted parole, Mr. Graterol Ruiz traveled to Massachusetts, where he has lived and worked. Because he had been granted humanitarian parole, he was eligible to obtain Employment Authorization Documents. Mr. Graterol Ruiz obtained medical treatment in Boston for continuing care of his lower right leg which had developed an infection, including in the bone. Surgery was performed in February 2025 to remove the infected bone. He was hospitalized for approximately six days. Thereafter, he had a regimen of antibiotic treatment. Mr. Graterol Ruiz had a secondary operation to drain his ankle in October 2025. He had initially planned to undergo a fusion surgery, but complications from his wound required an incision and drainage procedure. It appears his blood is regularly checked, and he has continued to be treated at Boston Medical Center for recurring infections.   At some point, Mr. Graterol Ruiz also had spinal surgery, but it is unclear

3

to the court if this is related to his fall injuries. He has previously been seen by doctors at Boston Medical Center regarding pain in his back from the surgery.

In the Petition, Mr. Graterol Ruiz asserts that his parole was revoked in May 2025 when a parole program for Cubans, Haitians, Nicaraguans and Venezuelans ("CHNV") was terminated. Mr. Graterol Ruiz was not granted parole through this program, however. Instead, Respondents assert that Mr. Graterol Ruiz was provided with written notice that his humanitarian parole was revoked. The written notice of this revocation has not been provided to the court. Instead, Respondents have provided a "Notice of Intent to Revoke Employment Authorization," dated April 30, 2025. (Doc. 12-3.) The notice starts with "[y]ou have previously received an email from the Department of Homeland Security (DHS) giving you notice that the parole that granted you access to the United States would be terminated 7 days after the date of the notice." (*Id.* at 1.) The notice continues: "[a]s your parole has been terminated, you no longer qualify for employment authorization as a parolee . . . ." (*Id.*) Later, the notice indicates, "[t]his notice is an additional reminder that your status in the United States *will* be unlawful *after your parole is terminated*, unless you have obtained some other status." (*Id.* (emphasis added)). It concludes with "[i]mportantly, please disregard this notice if your employment authorization document reflects any employment code other than (c)(11)." (*Id.*)

Respondents also provided a "Notice of Revocation of Parole-Based Employment Authorization" which is dated May 14, 2025. (Doc. 12-3 at 2.) Respondents indicate these two documents were sent to Mr. Graterol Ruiz. Mr. Graterol Ruiz states he did not receive either document.

On or about August 28, 2025, Mr. Graterol Ruiz was arrested by the Revere Police Department and charged with assault and battery on a family or household member, threat to

4

commit a crime, and assault with a dangerous weapon. He was not detained while the charges were pending. On January 14, 2026, Mr. Graterol Ruiz attended a court hearing related to these charges. Mr. Graterol Ruiz was arrested by ICE while at the courthouse. It is unknown to the court if he was arrested when he arrived at the courthouse or when he was leaving. The charges were dismissed on that date for "lack of prosecution." Mr. Graterol Ruiz asserts the charges were dismissed and he was then detained by ICE. Respondents assert the charges were dismissed because he was taken into ICE custody.

After he was detained, Mr. Graterol Ruiz was transported to Northwest State Correctional Facility in St. Albans, Vermont. He remains incarcerated there. He has not been provided with a bond hearing or an opportunity to contest his detention.

Upon his arrival at Northwest, it appears medical staff confirmed Mr. Graterol Ruiz had a prescription for Linezolid, an antibiotic. The prescription, however, ended as of January 18, 2026. Mr. Graterol Ruiz had a scheduled appointment at Boston Medical Center for blood and lab work on January 21, 2026. He was not transported to this appointment. The Linezolid was re-started on January 20, 2026. This is a necessary medication, without which Mr. Graterol Ruiz may face an infection that could result in the loss of his limb or his life. Mr. Graterol Ruiz has another appointment at Boston Medical Center on February 19, 2026 with the orthopedic surgery department.

According to counsel for the Superintendent of Northwest, efforts were made to see if local providers would perform the necessary blood work. Local medical providers would not treat him here as he had providers in Boston, and it would be difficult to get the required blood testing completed. The temporary restraining order that is in place prevents ICE from moving Mr. Graterol Ruiz to a different facility which may be better suited to provide health care.

In the Petition, Mr. Graterol Ruiz asserts that his detention violates the Due Process Clause of the Fifth Amendment to the United States Constitution and is being done in violation of 8 U.S.C. § 1226(a). Mr. Graterol Ruiz argues the Fifth Amendment requires an individualized detention or bond hearing and prohibits confinement in inhumane conditions. He further asserts he is being held in violation of his right to a bond hearing before an Immigration Judge under 8 U.S.C. § 1226(a). Respondents argue that when Mr. Graterol Ruiz's parole was terminated, he returned to being an "arriving alien" "seeking admission" without valid entry documents and is therefore subject to mandatory detention under § 1225(b)(2).

## Conclusions of Law and Analysis

### I. Standard of Review

"[A]bsent suspension, the writ of habeas corpus remains available to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (plurality opinion) (citing U.S. Const. art. I, § 9, cl. 2). "At its historical core, the writ of habeas corpus has served as a means of reviewing the legality of Executive detention . . . ." *Kapoor v. DeMarco*, 132 F.4th 595, 610 (2d Cir. 2025) (quoting *I.N.S. v. St. Cyr*, 533 U.S. 289, 301 (2001)). Subject to some exceptions, federal district courts are authorized to grant the writ of habeas corpus "within their respective jurisdictions." *Rasul v. Bush*, 542 U.S. 466, 473 (2004) (quoting 28 U.S.C. §§ 2241(a), (c)(3)).

### II. Detention Governed Under 8 U.S.C. § 1225 or § 1226

#### a. Statutory Framework

The question raised by this Petition is whether Mr. Graterol Ruiz is detained pursuant to 8 U.S.C. § 1225 or 8 U.S.C. § 1226. These are the two principal statutes governing the detention of noncitizens, not subject to final orders of removal, involved in pending immigration proceedings.

6

The first statute, 8 U.S.C. § 1225, applies to noncitizens "arriving in the United States" or "applicant[s] for admission" who are "seeking admission." 8 U.S.C. §§ 1225(b)(1), (2). The United States Supreme Court has held that "U.S. immigration law authorizes the Government to detain certain alien seeking admission into the country under §§ 1225(b)(1) and (b)(2)." *Jennings v. Rodriguez*, 583 U.S. 289, 297 (2018).

Whereas § 1225(b) governs detention of individuals "seeking admission the country," section 1226 of Title 8 "governs the process of arresting and detaining" noncitizens who are present within the United States, including those noncitizens who "were inadmissible at the time of entry or who have been convicted of certain criminal offenses since admission." *Id.* at 288 (citing 8 U.S.C. §§ 1227(a)(1), (2). The Government is authorized to "detain certain aliens already in the country pending the outcome of removal proceedings under §§ 1226(a) and (c)." *Id.* at 289. Section 1226(a) provides that noncitizens who are present in the country but are involved in immigration proceedings and awaiting a determination as to whether they should be removed, may be released by the Attorney General on bond or conditional parole. 8 U.S.C. § 1226(a)(2). A noncitizen detained under this statutory section can appeal to an immigration court and request a bond hearing. *Lopez Benitez v. Francis*, 795 F. Supp. 3d 475, 484 (S.D.N.Y. 2025).

The longstanding interpretation that the mandatory detention provision of § 1225(b) was inapplicable to individuals present in the country but involved in immigration proceedings was upended in September 2025 when the Bureau of Immigration Appeals ("BIA") held that all noncitizens who have entered the United States without inspection, regardless of how long they have resided in the United States, are "applicants for admission" who are "seeking admission" as contemplated by 8 U.S.C. § 1226(b). *Matter of Yajure Hurtado*, 29 I. & N. Dec. 216, 226–27 (BIA 2025). This new interpretation allows for the mandatory detention of all noncitizens alleged

7

to be in the United States unlawfully, regardless of how long they have been here, without any right to a bond hearing. *Id.* at 228. It is this statute under which Respondents argue Mr. Graterol Diaz is subject to mandatory detention.

As a preliminary matter, this court is not bound by precedent established by the BIA in *Matter of Yajure Hurtado*. "When the meaning of a statute [is] at issue, the judicial role [is] to interpret the act of Congress, in order to ascertain the rights of the parties." *Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 385 (2024) (citation modified). The Supreme Court ruled that courts have the "special competence" to resolve statutory ambiguities, while agencies do not. *Id.* at 400.

The court notes that all other judges in the District of Vermont have rejected *Matter of Yajure Hurtado*'s interpretation of 8 U.S.C. § 1225(b). *See Yupangui v. Hale*, No. 2:25-cv-884, 2025 WL 3207070 (D. Vt. Nov. 17, 2025); *Lopez v. Trump*, No. 2:25-cv-863, 2025 WL 3264151 (D. Vt. Nov. 17, 20205); *Walizada v. Trump*, No. 2:25-cv-00768, 2025 WL 3551972 (D. Vt. Dec. 11, 2025). Respondents' position has been rejected by many district courts in this Circuit. *See Yupangui*, 2025 WL 3207070 at *4; *see also Lopez Benitez*, 795 F. Supp. 3d at 485–86. Indeed, Respondents' position has been rejected by most district courts across the country. *Lopez*, 2025 WL 3264151, at *3.

> [T]he administration's new position that *all* noncitizens who came into the United States illegally, but since have been living in the United States, *must be detained* until their removal proceedings are completed—has been challenged in at least 362 cases in federal district courts. The challengers have prevailed, either on a preliminary or final basis, in 350 of those cases decided by over 160 different judges sitting in about fifty different courts spread across the United States.

*Barco Mercado v. Francis*, No. 25-cv-6582 (LAK), 2025 WL 3295903, *4 (S.D.N.Y. Nov. 26, 2025) (citing appendices containing references to the 362 cases). For reasons described below, this court joins these decisions rejecting Respondents' interpretation of 8 U.S.C. § 1226(b)(2).

8

### b. Humanitarian Parole

Mr. Graterol Ruiz was granted humanitarian parole when he arrived in the United States on May 2, 2024 pursuant to 8 U.S.C. § 1182(d)(5)(A). This statute authorizes the Secretary of Homeland Security to exercise his or her discretion and "parole into the United States temporarily under such conditions as he may prescribe only on a case-by-case basis for urgent humanitarian reasons or significant public benefit any alien applying for admission to the United States . . . ." 8 U.S.C. § 1182(d)(5)(A). An individual paroled into the country under this provision "shall not be regarded as . . . [admitted]." *Id.* When the Secretary of Homeland Security determines the purposes of parole have been served, the parole may be revoked and the individual "shall forthwith return or be returned to the custody from which he was paroled" and the individual's case "shall continue to be dealt with in the same manner as that of any other applicant for admission to the United States." *Id.* Mr. Graterol Ruiz's parole was to continue until May 1, 2026.

### c. Applicability of § 1225 or § 1226 when Parole is Revoked

Mr. Graterol Ruiz asserts that even if his parole has been validly revoked, he is entitled to a bond hearing before an Immigration Judge, as he is not "arriving" in the United States as required by 8 U.S.C. § 1225(b)(1). Respondents argue that because his parole has been revoked, he should be considered to be "arriving" in the country as he was in May 2024, and therefore, be subject to mandatory detention. The court now considers whether an individual who was granted humanitarian parole and has been residing and working in the country should be considered as "arriving" in the United States and subject to mandatory detention under 8 U.S.C. § 1225(b).

#### i. 8 U.S.C. § 1225(b)(1)

To be subject to mandatory detention under 8 U.S.C. § 1225(b), Mr. Graterol Ruiz must be seen as "arriving in the United States." 8 U.S.C. § 1225(b)(1). To determine what "arriving the

9

United States" means, the court first looks to the statute's plain meaning. *United States, ex rel. Polansky v. Exec. Health Res., Inc.*, 599 U.S. 419, 432 (2023) (citing *Montclair v. Ramsdell*, 107 U.S. 147, 152 (1883)). Several district courts have engaged in thorough discussions regarding its meaning. *See e.g.*, *Rodriguez-Acurio v. Almodovar*, No. 2:25-cv-6065 (NJC), 2025 WL 3314420, at *19–20 (E.D.N.Y. Nov. 28, 2025); *Coal. for Hum. Immigrant Rts. v. Noem*, No. 25-cv-872 (JMC), 2025 WL 2192986, at *27 (D.D.C. Aug. 1, 2025); *Qasemi v. Francis*, No. 25-cv-10029 (LJL), 2025 WL 3654098, at *6 (S.D.N.Y. Dec. 17, 2025). The court finds the analysis in these cases persuasive. Mr. Graterol Ruiz has arrived in the United States. He arrived in the United States on May 2, 2024. If he has arrived, he can no longer be "arriving." While the terms of 8 U.S.C. § 1182(d)(5)(a) are clear that a paroled individual like Mr. Graterol Ruiz has not been *admitted* to the United States, this language does not mandate a finding that he is "arriving in the United States."

In support of their argument, Respondents cite the holding of the Second Circuit in *Ibragimov v. Gonzales*, 476 F.3d 125 (2d Cir. 2007), as controlling precedent. In *Ibragimov*, which was decided prior to the United States Supreme Court's decision in *Loper Bright*, the Second Circuit interpreted regulations adopted by the Immigration and Naturalization Service ("INS") to affirm a BIA decision concluding an individual who had been granted advance parole was to be considered "an arriving alien" and an "applicant for admission." *Id.* at 131–33. In so doing, the Second Circuit concluded:

> [U]*nder valid and unambiguous INS regulations* governing the grant of advance parole, petitioner was properly treated as an "arriving alien" and an "applicant for admission" in removal proceedings once his adjustment-of-status application was denied. . . . *INS regulations* manifest the agency's clear intent to treat parolees, including advance parolees, as "arriving aliens" subject to a determination of inadmissibility.

10

*Id.* at 132 (emphasis added). The Second Circuit has not considered the language in 8 U.S.C. § 1225(b)(1)(A)(i) since the Supreme Court's decision in *Loper Bright*, which requires courts to "exercise independent judgment in determining the meaning of statutory provisions." *Loper Bright*, 603 U.S. at 394. *Ibragimov*'s analysis relied heavily on the INS' interpretation in reaching its conclusion, as the statute does not define "arriving in the United States." *Ibragimov*, 476 F.3d at 134–35. As previously stated, this court is not bound by an agency's statutory interpretation and must independently determine the meaning of the language in §§ 1225, 1226, and 1182.

Courts are directed to interpret statutes based on their plain and ordinary meaning. *Assocs. Against Outlier Fraud v. Huron Consulting Grp., Inc.*, 817 F.3d 433, 437 (2d. Cir. 2016); *Martinez v. Hyde*, 792 F. Supp. 3d 211, 218 (D. Mass. 2025). Here, Section 1225(b)(1) refers to individuals "arriving in the United States." 8 U.S.C. § 1225(b)(1)(A)(i). Mr. Graterol Ruiz is "an applicant for admission" to the United States as he is an individual present in the United States who has not been admitted, as defined by section 1226(a)(1). *Id.* § 1225(a)(1) ("An alien present in the United States who has not been admitted or who arrives in the United States . . . shall be deemed for purposes of this chapter an applicant for admission."); *see id.* § 1182(d)(5)(A) ("[S]uch parole of such alien shall not be regarded as an admission of the alien . . . ."). A person who is not admitted does not mean that the individual is arriving. There is nothing to suggest that he should be subject to a continuing process of "arriving" over the course of nearly two years. In sum, the court concludes that Mr. Graterol Ruiz is not subject to mandatory detention under 8 U.S.C. § 1225(b)(1), because he is not arriving in the United States.

### ii. 8 U.S.C. § 1225(b)(2)

Section 1225(b)(2) also provides for mandatory detention for an "applicant for admission," who is "seeking admission," and is "not clearly and beyond a doubt entitled to be admitted." As

11

already established in the preceding section, Mr. Graterol Ruiz is "an applicant for admission." *See* 8 U.S.C. § 1225(a)(1) (including noncitizens present in the United States who have not been admitted in the definition of an applicant for admission). There is also no dispute that Mr. Graterol Ruiz is not admitted. *See id.* § 1182(d)(5)(A). The only question in dispute is whether Mr. Graterol Ruiz is "seeking admission," and therefore, subject to mandatory detention under Section 1225(b)(2).

Mr. Graterol Ruiz asserts that he cannot be seeking admission as he entered and has been living in the country. Respondents counter that when Mr. Graterol Ruiz's parole was terminated, his status returned to being "an arriving alien" who was "seeking admission." This is not what the statute requires. Section 1182(d)(5)(A) states the noncitizen shall be "returned to the *custody* from which he was paroled," not that the individual's status is returned to "arriving alien" "seeking admission." *Id.* (emphasis added). The court now considers the language "returned to custody" and its implications in Mr. Graterol Ruiz's case.

As articulated by the *Qasemi* court, this does not mean that the noncitizen is returned to detention. *Qasemi*, 2025 WL 3654098, at *10. Individuals who are "paroled," are generally seen to be in the custody of the supervising agency, whether it be a parole board or immigration officials. *Id.* "A noncitizen . . . who is returned to the custody from which he was paroled loses the freedoms associated with parole status and is once again subject to the same constraints on liberty that apply to any noncitizen in removal proceedings without parole." *Id.* Because Mr. Graterol Ruiz's parole was revoked, he now loses the privileges granted to him through the parole process and is subject to the same constraints on liberty that apply to a noncitizen in removal proceedings.

This does not, however, equate to Mr. Graterol Ruiz "arriving in the United States" or "seeking admission." He is an applicant for admission, but he cannot be seen as "arriving in the United States." For the reasons stated above, Mr. Graterol Ruiz cannot be seen as "seeking admission." He is not seeking admission. He is not seeking lawful entry. He is seeking a means of lawfully remaining in the United States. *See Rodriguez-Acurio*, No. 2:25-cv-6065 (NJC), 2025 WL 3314420, at *22 (E.D.N.Y. Nov. 28, 2025).

The court finds Mr. Graterol Ruiz's parole revocation has returned him to the "custody" of DHS. *See Qasemi*, 2025 WL 3654098, at *11. Additionally, since he is neither "arriving in the United States" or "seeking admission," he is not subjected to mandatory detention pursuant to either Section 1225(b)(1) or 1225(b)(2). Mr. Graterol Ruiz's detention needs to be evaluated under Section 1226(a). Section 1226(a) requires discretionary detention, which includes an individual determination. *Velasco Lopez v. Decker*, 978 F.3d 842, 848 (2d Cir. 2020) ("The Immigration and Nationality Act ('INA') has provided for discretionary detention pending removal proceedings since it was enacted in 1952. The statute providing for that detention is currently codified as 8 U.S.C. § 1226(a).").

No evidence has presented to indicate any exercise of discretion or individualized assessment was conducted to determine why Mr. Graterol Ruiz is detained. Nevertheless, Respondents argued an individualized bond hearing, rather than immediate release, would be more appropriate given the presence of facts that raise a potential question as to dangerousness to the community based on his criminal history. The court does not make a finding as to the weight to be given to this evidence, but merely finds this argument meets the threshold, and therefore finds that a bond hearing is necessary.

### III. Fifth Amendment Right to Due Process Claims Concerning Conditions of Confinement

Mr. Graterol Ruiz claims his detention violates the Due Process Clause of the Fifth Amendment in light of both his serious medical conditions and being denied necessary medical care. (Doc. 1 at 16; Doc. 13 at 3.) He has a complex orthopedic medical history, including "multiple invasive surgeries" and being "diagnosed with septic arthritis in his right ankle." (Doc. 13 at 3.) On January 21, 2026, Mr. Graterol Ruiz had a pre-scheduled doctor's appointment at Boston Medical Center that he missed due to his detention. (*Id.*) In addition, Mr. Graterol Ruiz missed several dosages of antibiotics to prevent infection over a thirty-six-hour period while detained. (*Id.*) Based on his serious medical conditions and what he asserts to be ICE's deliberate indifference to his medical needs, he requests his immediate release. (Doc. 1 at 18.)

Federal Respondents argue that any medical services that have been not available to Mr. Graterol Ruiz are due to this court enjoining ICE from removing Petitioner from the District of Vermont. (Doc. 12 at 14; *see also* Doc. 4.) The temporary restraining order prevented ICE from transferring Mr. Graterol Ruiz to Miami, Florida, where they assert the facility has the capabilities to address his medical needs. (*See* Doc. 4.) The court ordered a hearing on January 28, 2026 to discuss Mr. Graterol Ruiz's medical needs. (Doc. 6.) Petitioner's counsel stated that Mr. Graterol Ruiz's medical conditions did not warrant immediate transfer prior to the scheduled hearing on the present motion.

Under the Fifth Amendment's Due Process Clause, a pre-trial detainee may not be subjected to conditions that "amount to punishment," including the denial of medical care. *Bell v. Wolfish*, 441 U.S. 520, 535–36 (1979); *Munoz Materano v. Arteta*, 804 F. Supp. 3d 395, 423 (S.D.N.Y. 2025). The Supreme Court has clarified that the Eighth Amendment is violated when the state is deliberately indifferent to a detained individual's medical needs. *See Estelle v. Gamble*, 429 U.S. 97, 104 (1976). The Court has extended the Eighth Amendment's protection for prisoners

to civil detainees pursuant to the Fourteenth Amendment's due process protections. *Youngberg v. Romeo*, 457 U.S. 307, 321 (1982); *see also Charles v. Orange Cnty.*, 925 F.3d 73, 82 (2d Cir. 2019). This has also been applied to Fifth Amendment claims. *See Munoz Materano*, 804 F. Supp. 3d at 423. Mr. Graterol Ruiz's Fifth Amendment claims must meet the following: "(1) the existence of a 'serious medical need,' and (2) that Respondents acted with deliberate indifference to such need." *Id.* (quoting *Charles*, 925 F.3d at 85).

The serious medical need "must be, in objective terms, 'sufficiently serious.'" *Hathaway v. Coughlin*, 37 F.3d 63, 66 (2d Cir. 1994) (quoting *Wilson v. Seiter*, 501 U.S. 294, 298 (1991)). The first element "standard contemplates a condition of urgency such as one that may produce death, degeneration, or extreme pain." *Charles*, 925 F.3d at 86 (citing *Hathaway v. Coughlin*, 99 F.3d 550, 553 (2d Cir. 1996)).

A serious medical condition can exist "where the failure to treat a [petitioner's] condition could result in further significant injury or the unnecessary and wanton infliction of pain . . ." *Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998) (citation modified). Other factors considered are "whether a reasonable doctor or patient would find the injury important and worthy of treatment, whether the medical condition significantly affects an individual's daily activities, and whether the illness or injury inflicts chronic and substantial pain. *Charles*, 925 F.3d at 86 (citing *Chance*, 143 F.3d at 702).

According to the medical records provided to the court, Mr. Graterol Ruiz has a complex orthopedic condition that has required multiple surgeries and medication to combat infections. The treatment is ongoing to prevent the potential amputation of his leg or loss of his life. He is on a medication regime that needs to be strictly followed, or he is at risk of severe infection. Further, Mr. Graterol Ruiz's mobility is sufficiently limited by his condition as he presented in court on

crutches. The court determines that Mr. Graterol Ruiz has a sufficiently serious medical condition that, left untreated, could have severe consequences.

For the second prong, the Petitioner must show that the Respondents "knew of and disregarded the plaintiff's serious medical needs." *Highley v. BAART Clinic*, No. 2:23-cv-569, 2024 WL 4487230, at *7 (D. Vt. July 22, 2024), *report and recommendation adopted sub nom. Highley v. BAART's Clinic*, No. 2:23-cv-00569, 2024 WL 4224105 (D. Vt. Sep. 18, 2024) (citation modified). This deliberate indifference standard needs to be "something more than mere negligence." *Charles*, 925 F.3d at 87 (quoting *Weyant v. Okst*, 101 F.3d 845, 856 (2d Cir. 1996)). Respondents need to have "acted intentionally to impose the alleged condition, or recklessly failed to act with reasonable care to mitigate the risk that the condition posed to the pretrial detainee even though the [Respondents] knew, or should have known, that the condition posed an excessive risk to health or safety." *Darnell v. Pineiro*, 849 F.3d 17, 35 (2d Cir. 2017). The Second Circuit determined:

> [A] detainee asserting a . . . claim for deliberate indifference to his medical needs can allege either that the [respondents] *knew* that failing to provide the complained of medical treatment would pose a substantial risk to his health or that the [respondents] *should have known* that failing to provide the omitted medical treatment would pose a substantial risk to the detainee's health.

*Charles*, 925 F.3d at 87. "Prison officials and medical officers have wide discretion in treating prisoners, and determinations of medical providers concerning the care and safety of patients are given a presumption of correctness." *Jones v. Sheriff of Suffolk Cnty.*, 518 F. Supp. 3d 650, 657 (E.D.N.Y. 2021) (citation modified).

Here, Mr. Graterol Ruiz's claims of deliberate indifference arise from missing his antibiotics and missing his lab work appointment with Boston Medical Center on January 21, 2026.

At the hearing, he also raised concern that any transfer to another facility could delay any necessary medical care, including medications.

The court cannot find deliberate indifference based on the missed antibiotics, specifically the Linezolid. Mr. Graterol Ruiz's prescription ended on January 18, 2026. Although it appears he missed some dosages, the Linezolid was restarted on January 20, 2026. Further, at the hearing on the motion, counsel for Respondents acknowledged the delay in medication may have been initially due to the language barrier, but clarified there is now an understanding of the critical nature for the antibiotics. Counsel for Mr. Graterol Ruiz also acknowledged that the missed medication was not malicious and the medical staff at Northwest were doing an "excellent job" in caring for Mr. Graterol Ruiz.

The court now turns to the missed appointment and potential transfer. The records provided to the court detail the medical encounters Mr. Graterol Ruiz has had with medical staff at Northwest. Prior to January 21, 2026, medical officials acknowledged his upcoming appointment at the Boston Medical Center. On January 22, 2026, a physical therapist reported that "due to all these factors it would be my professional opinion to leave his ambulatory/weight bearing-status unchanged at this time and refer the patient back to his orthopedic surgeon who is most familiar to this patient case."

At the hearing on the motion, counsel for Superintendent Hale represented to the court that Northwest is unable to transfer Mr. Graterol Ruiz to Boston Medical Center for any medical treatment. Additionally, ICE's contract with Northwest is limited to Northwest and Chittenden Regional Correctional Facility—and even if there were any officials authorized to transport Mr. Graterol Ruiz—Northwest is not at liberty to place Mr. Graterol Ruiz in a different facility that could facilitate transport to the Boston Medical Center.

These facts suggest an inadequacy of care that Mr. Graterol Ruiz has received while detained. At the same time, Respondents acknowledge the severity of his conditions but are unable to address them without being allowed to transport him to a facility located outside this district, specifically in Miami, Florida. Collectively, this catch-22 may be sufficient to show deliberate indifference. Respondents in this case knew or should have known that missing his appointment could pose a substantial risk to Mr. Graterol Ruiz's health.

Mr. Graterol Ruiz's records prior to his detention indicate a need for continued treatment and care at Boston Medical Center that includes both surgical and non-surgical options. The court recognizes the absurdity of transferring Mr. Graterol Ruiz to another state when he already has established care in Boston. This absurdity may rise to the deliberate indifference required for Petitioner's Fifth Amendment claim. Respondents, however, only received Mr. Graterol Ruiz's medical records after the hearing on the motion. They should have the opportunity to review and establish why transferring Mr. Graterol Ruiz to another doctor in Miami, contrary to what has been recommended by professionals, is appropriate. For the foregoing reasons and without more evidence, the court cannot rule whether Mr. Graterol Ruiz' Fifth Amendment rights have been violated.

### IV. Fifth Amendment Right to Due Process Claims Regarding Lack of Administrative Review

Petitioner's Reply to Respondent's Opposition to the Petition argues Mr. Graterol Ruiz's revocation of parole was done in violation of his right to Due Process under the Fifth Amendment to the United States Constitution. (Doc. 13 at 10.) Section 1182(d) authorizes a revocation of parole when the Secretary of Homeland Security determines the purposes of the parole have been served. 8 U.S.C § 1182(d)(5)(A). The regulations implementing 8 U.S.C. § 1182(d)(5)(A) suggest a person receive "written notice" prior to the revocation of parole. 8 C.F.R. 212.5(e)(2)(i).

"Several courts have found that just as a grant of parole requires an individualized review, revocation of parole requires a case-by-case assessment to comply with the statute." *Meta Velasquez v. Kurzdorfer*, 794 F. Supp. 3d 128, 146 (W.D.N.Y. 2025) (first citing *Y-Z-L-H v. Bostock*, 792 F. Supp. 3d 1123, 1138 (D. Or. July 9, 2025) ("Common sense suggest that parole given only on a case-by-case basis is to be terminated only on such basis." (citation modified)); and then citing *Doe v. Noem*, 778 F. Supp. 3d 311, 339 (D. Mass.), *vacated and remanded*, 152 F.4th 272 (1st Cir. 2025) ("The statute thus seems to contemplate termination of parole on an individual, rather than categorical basis. This makes sense: Even under the categorical programs, grants of parole were made on a case-by-case basis.")) Additionally, courts have held that detention without notice would violate Petitioner's procedural due process rights. *See e.g.*, *Rodriguez-Acurio*, 2025 WL 3314420, at *28.

Respondents point to the "Notice of Intent to Revoke Employment Authorization" as written notice of the parole revocation. This notice references an earlier email that was purportedly sent to Mr. Graterol Ruiz. This email is not in the record. Additionally, the notice does not specify the basis for the revocation of parole.

Respondents did not have notice of this argument until shortly before the hearing on the motion. Without the argument having been raised in the initial petition, Respondents would not have known to attempt to obtain this document. While the court has concerns about whether written notice was provided to Mr. Graterol Ruiz as required, or whether a constitutionally appropriate process was followed, the court will not address this issue on the merits. Respondents have not had an adequate opportunity to respond.

## CONCLUSION

Parties should have additional time to gather information regarding the constitutional issues raised, specifically regarding the conditions of confinement and the revocation of parole. In the interim, to address the lack of an individualized determination that Mr. Graterol Ruiz is entitled to pursuant to 8 U.S.C. S 1226(a), the court orders an individualized bond hearing to occur within five days in front of an Immigration Judge. At this hearing, the government will bear the burden of showing by clear and convincing standard evidence that Mr. Graterol Ruiz poses a flight risk or a danger to the community. The parties shall report to the court when this hearing is scheduled and the outcome. Additionally, the temporary restraining order shall remain in effect until 5:00 p.m. on February 13, 2026.

DATED at Rutland, in the District of Vermont, this 6th day of February 2026.

*[signature]*
Mary Kay Lanthier
United States District Court